## Case No. 11,342.

### POTTER et al. v. WILSON et al.

[2 Fish. Pat. Cas. 102; 17 Leg. Int. 333.] [1]

Circuit Court, S. D. New York. August, 1860.

PATENTS — NOVELTY — LICENSEES AS PARTIES TO SUIT FOR INFRINGEMENT—INFRINGEMENT.

1. Previous to the invention of Wilson, the material to be sewed had been advanced under the needle by the hand of the operator, or fixed permanently to a frame called a baster plate, which was advanced with the cloth by a regular progressive motion, to the needle, through the agency of suitable machinery. By the former process the cloth could be turned at will, but there was no security for regularity of stitch except the care and skill of the operator. By the latter, the regularity of stitch was attained; but from the permanent attachment of the cloth to the baster plate, a seam, with curvatures and angles, at the will of the operator, could not be formed. The object of the improvement of Wilson was to remedy these defects, by causing the cloth to be moved automatically under the needle, and the device so arranged as to admit of seams of any curvature, and at the same time secure regularity of stitch. This Wilson accomplished by the machinery and process described in the specification of the patent. Instead of the baster plate, the cloth was advanced under the needle mechanically, by the joint action of two surfaces between which it is held, an intermittent motion being given to at least one of them, which caused the cloth to progress regularly, securing uniformity of stitch, and at the same time permitting the material to be turned by the

hand so as to sew a straight or curved seam. The novelty of the invention of Wilson examined and sustained.

[Cited in Potter v. Muller, Case No. 11,334.]

2. Where it was claimed that two companies for whom the complainants held the patents in trust, should have been made parties complainant, held, that if those companies were but licensees under the complainants, their interest would not be such as would, in the sense of the patent law, require them to be joined.

3. The objection to the introduction of testimony at the hearing, not introduced before the examiner, is too plain to call for observation. If introduced before the examiner, the attention of the opposite party would have been called to it, and an opportunity afforded for explanation.

4. So long as a patentee's ideas are found in the construction and arrangement of the defendants' machine, no matter what may be its form or shape or appearance, the party using it is appropriating his invention and must be held to be an infringer.

This was a bill in equity, filed [by Orlando B. Potter and Nathaniel Wheeler] to restrain the defendants [James G. Wilson and Alexander C. Stockmar] from infringing letters patent, granted to Allen B. Wilson, November 12, 1850 [No. 7,776], for an "improvement in sewing machines." The original patent was surrendered and reissued January 22, 1856, in two divisions, designated as "Reissue Nos. 345 and 346." Reissue 345 was surrendered and reissued, December 7, 1856, and designated as "Reissue 414." See, also, Potter v. Holland [Case No. 11,330].

The claims of the original patent of 1850 were as follows: "What I claim, etc., is, forming a stitch by each throw of the shuttle and corresponding motion of the needle; that is to say: making one stitch at each forward, and another at each backward motion of the shuttle, both constructed, arranged, and operating as herein described, or in any other mode substantially the same. Second. I claim the combination of the sliding bar, Q, the plate, r, the feeding plate, V, the spring, W, the screw, t, the lever, R, and the clamping plate, T, for holding and feeding the cloth to the needle, and regulating the length of the stitch, in the manner herein described, or in any way substantially the same."

The claim of reissue 345, afterward surrendered, was as follows: "What I claim is forming a stitch at each throw of the shuttle and corresponding motion of the needle; that is to say: making one stitch at each forward and another at each backward motion of the shuttle, both constructed, arranged, and operated as herein described, or in any other mode substantially the same."

The claims of reissue 346 were as follows: "What I claim is, the method of causing the cloth or material to be sewed in a sewing machine, to progress regularly by the joint action of the surfaces between which it is clamped, and which act in conjunction, substantially in the manner and for the purpose herein specified. 2d. I claim holding the

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission. 17 Leg. Int. 333, contains only a partial report.]

cloth or other material at rest by the needle, or its equivalent, in combination with the method of causing it to progress regularly, the whole substantially as herein set forth. 3d. I claim arranging feeding surfaces, substantially such as are herein specified, in such relation to the needle as herein set forth, that they, or one of them, shall perform the office of stripping the cloth or material from the needle as it rises, or recedes from it, as herein described. 4th. I claim so mounting and attaching one of the feeding-surfaces to some other part of the machine, that it may be removed or drawn away from the other surface at pleasure. substantially in the manner and to effect the objects herein set forth."

The claims of reissue 414, obtained by surrender of reissue 345, were as follows: "I claim: 1st. The combination, in a single machine, of these three following elements, namely: A table, or platform, to support the material to be sewed, holding it for the action of the needle, and presenting it properly to the grasp of the feeding apparatus; a sewing machine proper, consisting of a needle and shuttle, or their equivalents, and a mechanical feed automatic and causing the cloth to progress regularly, by a feeding mechanism, to which the cloth is not attached, and so grasping the cloth that it may be turned and twisted by the hand of an operator, such twisting not interfering with the regular progression of the cloth; and the whole being constructed and acting together, and in combination with each other, substantially in the manner and for the purposes herein specified. 2d. I claim moving a shuttle, so shaped and held by its race, that jaws which may embrace it, by means of two jaws, which are alternately in contact with the shuttle, and are constructed and move substantially in the manner herein set forth, making and breaking their contact without any aid from cams or springs, or the equivalents of such devices. And, lastly. I claim a double-pointed shuttle, substantially such as is herein specified, in combination with jaws for driving it, substantially such as are described, whereby the shuttle may be thrown alternately from opposite directions, through loops, without practically disturbing the loop-thread."

In the sewing machines of Howe, Bacheldor, and others, invented and used prior to the invention of Wilson, the cloth was fed to the needle by reciprocating or rotating baster plates. These consisted of strips of steel furnished with sharp, needle-like points about one-fourth of an inch in length, upon which the cloth was impaled or hung, the points penetrating the layers of cloth and "basting" them together. By appropriate mechanism these plates were moved past the needle, carrying the cloth with them. The feeding device described by Wilson, consisted of a bar beneath the table, having, upon the upper side of one vibrating end, serrations, or roughened projections, resembling, somewhat, a shoemaker's rasp. A slot in the table permitted these projections to rise slightly above its surface, so that cloth laid upon it would be caught by the projections and carried forward with each forward movement of the bar. To afford resistance, and to enable the serrations to seize the cloth, a plate pressed upon the cloth from above, kept in place by a spring, and this plate or presser, and the roughened bar, constituted the "two feeding surfaces," which were the principal features of the patent. The teeth upon the bar projected forward, so that they caught the cloth when moving in that direction, but slipped under it without moving it, when drawn backward; a result which was facilitated by the descent of the needle through the cloth simultaneously with the retraction of the feed-bar.

Geo. Gifford and E. W. Stoughton, for complainants.

Blatchford, Seward & Griswold, for defendants.

NELSON, Circuit Justice. These suits are founded upon two reissued patents to A. B. Wilson, for improvements in the feed motion of a sewing machine. The original patent for the invention was granted November 12, 1850. It was surrendered, and two reissues, numbered 345 and 346, were issued thereon, both bearing date January 22, 1856. 345 was subsequently surrendered, and reissued December 9, 1856, numbered 414.

Previous to the invention of Wilson, as claimed by the plaintiffs, the material to be sewed had been advanced under the needle, or sewing apparatus, by the hand of the operator, or fixed permanently to a frame, called, in technical language, a "baster plate," which was advanced with the cloth by a regular progressive motion, to the needle, through the agency of suitable machinery. By the former process, feeding by hand, the cloth could be turned at will, so that seams of any given curvature could be sewed, but there was no security for regularity of stitch except the care and skill of the operator. By the latter, the regularity of stitch was attained, but from the permanent attachment of the cloth to the baster plate, a seam, with curvatures and angles, at the will of the operator, as the sewing progressed, could not be formed. The object of the improvement in question was to remedy these defects, by causing the cloth to be moved automatically under the needle, and the device so arranged as to admit of seams of any curvature, and at the same time secure regularity of stitch. This Wilson accomplished by the machinery and process described in the specification of the patent.

Instead of the baster plate, the cloth was advanced under the needle mechanically, according to the arrangement, by the joint action of two surfaces between which it was held, an intermittent motion being given to at least one of them, which caused the cloth to progress regularly, securing uniformity of stitch, and at the same time permitting

the material to be turned by the hand so as to sew a straight or curved seam.

The claims in the reissued patents, numbered 346 and 414, which are in controversy in these suits, are all founded upon this feed improvement upon the previous sewing machines.

The utility of the improvement is admitted; indeed, it is apparent, that without it, or some equivalent which would admit of curved seams to be sewed automatically, the sewing machine, now in almost universal use, would have been comparatively very limited in its operation. It is insisted, however, that Wilson was not the first and original inventor, which objection raises the principal question in these cases.

The persons mainly relied upon, and indeed the only persons that can be relied upon, according to the proof, with any plausibility, to prove priority of invention, are Wm. H. Akins, of Ithaca, and Leander W. Langdon, of Rochester, New York.

The proof is very full and satisfactory, that the invention of Wilson was so far matured as to admit of sewing curved seams by way of experiment as far back as 1849. In April, 1849, its peculiarities were noticed in the Berkshire Culturist, published at Pittsfield, Massachusetts; and in November of that year, a more extended notice of it, with full lithographic prints, was given in the Scientific American, published in New York and Boston.

Akins himself has been examined as a witness in these cases upon the question of priority of his invention, and he does not carry its date further back than the latter part of the year 1850. He had made, previous to this examination, three affidavits on the subject, but in neither of these does he state that his improvement extended back to 1848; the furthest his affidavits carry its date is the fall of 1849. And over and above his testimony, the clear and decided weight of the proof confirms the date he gives of the invention, when examined as a witness in the cases, namely, the fall of 1850. One very decisive fact upon this question is not in dispute, and that is, that the first machine made by Akins, after the partnership with Felthousen (which commenced in August, 1850), had upon it the feed of the baster plate, resembling that of the Lerow & Blodgett machine, which was exhibited in Ithaca in the winter of 1849 and 1850.

The feed admitting of curved seams was first introduced into the second machine made by him in the fall of 1850, some two years after the date of Wilson's improvement, and which was even after the date of his patent. It is remarkable, if Akins had invented the feed improvements as early as 1848, which admitted the sewing of curved seams, an improvement so useful, and which has added so much to the value of the instrument, that some two years afterward, when

he commenced the business of manufacturing the machines, he should have omitted the use of it altogether.

There is another remarkable feature in this claim of Akins. A patent was issued to him and Felthousen jointly, August 5, 1851, as joint inventors, including this improvement. This was upon a model of the second machine made by him. It is agreed that these patentees first commenced business together in August, 1850, and that Felthousen had had no previous connection or interest in sewing machines, nor any knowledge of them. Both must have made oath that they were the joint inventors of the improvements claimed before the patent could issue; and if true, as to Felthousen, the date of the invention must have been later than August, 1850. It is now pretended that Akins was the sole inventor of the improvement of the feed; if this be true, the patent office was imposed upon, as it could not properly have issued a patent to Akins and Felthousen, as joint inventors, for an improvement on the sewing machine by one of them. It is said that Akins was the inventor of the improvement in the feed, and Felthousen of the set-screw above the needle-arm; if so, then separate patents ought to have issued to each for his own improvement, and not a joint patent to the two. If so issued, the patent is void. This action of Akins and Felthousen in procuring the patent, goes to confirm the view of Akins himself, in his testimony, that he did not invent the improvement until after the partnership with Felthousen, in August, 1850.

We forbear going over the proofs in detail upon this question of priority, and shall content ourselves by saying, after a very careful analysis and examination, the weight is all one way, and that is against the pretension set up in behalf of Akins.

In respect to the claim of Leander W. Langdon, his own account of his invention is as follows: That when thirteen years of age, and in the service of Daniel Rall, in Rochester, New York, some time in the year 1847, he read the description of a sewing machine in a newspaper, and observed from the description that the cloth was placed on pins or sharp points, so that the curve of the seam could not be varied after the cloth was placed upon the pins, and that the idea then occurred to him of making a feed, by which the curve of the seam could be varied; that after some weeks, he had so far matured his thoughts as to make a feed model out of a shingle. No other parts of the machine were made. Nothing further was done in the way of perfecting his improvement, or in adapting it to practical use, till the fall of 1850, when he commenced the construction of a machine in the shop of a Mr. Wright in Rochester. The shingle feed model of 1847 was not preserved, as of any value or importance at the time, and has been lost.

He claims that the machine made in Wright's

shop in the fall of 1850, was a working machine, and embraced the feed motion devised in 1847. Langdon, in a subsequent examination, attempted to change the time of working upon the machine in Wright's shop, from the fall of 1850 to 1849.

It is quite clear, adopting the most favorable account of the invention of Langdon, as given by himself, that the proof falls short of overcoming the patents of Wilson, and the testimony upon which the originality and priority of his improvements rest. The proof fails as matter of law. "It is not enough to defeat a patent already issued that another conceived the possibility of effecting what the patentee has accomplished. To constitute a prior invention, the party alleged to have produced it, must have proceeded so far as to have reduced his idea to practice, and embodied it in some distinct form. It must have been carried into practical operation, for he is entitled to a patent who, being an original inventor, has first perfected the invention and adapted it to practical use. Crude and imperfect experiments, equivocal in their results, and then given up for years, can not be permitted to prevail against an original inventor, who has perfected his improvement and obtained his patent." Parkhurst v. Kinsman [Case No. 10,757].

In this case, the pretended shingle model, containing the feed of a sewing machine, had no provision or arrangement for connecting it with or adapting it to the machine, and was laid aside for years and forgotten till after the improvement by Wilson was perfected, a patent granted, and the working machine had gone into general use.

But, independently of this ground, which we regard as conclusive upon the question, the proofs are overwhelming that Langdon's alleged improvement was long after that of Wilson, and even after the issuing of his patent of November 12, 1850.

Even the engine at Rall's, which he pretends to have been engaged in working when he read a description of the sewing machine in a newspaper, and made his shingle model of the feed in 1847, was not erected and put into operation until the spring or summer of 1848. And the clear weight of the evidence is, that he never worked upon a sewing machine till he went to work for Burroughs, in the fall of 1851, who was engaged in manufacturing A. B. Wilson's machines, and did not commence making a machine for himself, or with a view to any improvement upon the same, till the spring or summer of 1852.

Our conclusion is, that upon the whole of the proofs in the case, the clear weight of them supports the priority of A. B. Wilson's invention of the feed motion, and consequently the patents founded upon it.

Some objections have been taken to the defense, independently of the question upon the invention, which it is necessary briefly to notice:

1. An objection that the proper parties complainant have not been joined in the suit.

This objection is founded upon the testimony of Orlando B. Potter, who was examined as a witness for the complainants. He states that the suits were commenced for the interest and benefit of the two companies represented by himself and Nathaniel Wheeler, namely, the Wheeler & Wilson Manufacturing Company and the Grover & Baker Sewing Machine Company; and that the nominal complainants have no interest in the suits, except as representatives of the two companies, and as stockholders therein. That the patents are held by them as trustees of these companies.

The proofs show that the legal title to the patents, and exclusive right to them in the state of New York, are in the complainants; and in a court of law they are the only parties proper to bring the suits.

It is urged, however, that in equity all parties must be joined who are interested in the subject-matter of the litigation.

In one sense, according to the testimony of Potter, these two companies may be said to be interested, but whether so or not, as to require them to be joined in the suit, is not certain. If they are but licensees under Potter and Wheeler, then their interest would not be such as would, in the sense of the law of patents, require them to be joined; and this is the relation they hold to the complainants, as insisted upon by their counsel.

This objection as to parties was not taken in the answer, nor do the proofs on either side seem to have been directed to the question. It has been raised for the first time at the hearing. An effort was made by the counsel for the defense to introduce evidence on the subject at the hearing, but the objection to its reception is too plain to call for any observations. If introduced before the examiner, the attention of the opposite party would have been called to it, and an opportunity afforded for explanation. These objections, as to parties, are not favored when postponed to the final hearing upon the pleadings and proofs. [Mechanics' Bank of Alexandria v. Seton] 1 Pet. [26 U. S.] 299, 306; [Story v. Livingston] 13 Pet. [38 U. S.] 375.

2. Objections have also been taken to some of the claims under the reissued patents of January 22, 1856, and December 9, 1856, Nos. 346 and 414.

The first claim in No. 346 is the method of causing the cloth to be sewed to progress regularly by the joint action of the surfaces between which it is clamped, and which act in conjunction, substantially in the manner and for the purposes specified.

The second, holding the cloth at rest by the needle or its equivalent, in combination with the method of causing it to progress regularly, substantially as set forth.

The third, arranging the feeding surfaces, substantially as specified in such relation to

the needle that they or one of them shall perform the office of stripping the cloth from the needle as it rises or recedes from it; and—

The fourth so mounting and attaching one of the feeding surfaces, to some other part of the machine, that it may be removed or drawn away from the other surface at pleasure, as set forth.

Now, it is apparent that all the several claims rest upon and grow out of the main improvement in the feeding apparatus, consisting of two surfaces clasping the cloth, and advancing it to the needle by the intermittent motion of one of them, and so arranged as, at the same time, to admit of the turning of the cloth, and sewing seams of any practically useful curvature. If this device is novel, and we have already shown that it was, then these dependent combinations and devices may well be maintained.

The same observations are applicable to the claim for a combination, embracing this feed improvement, in the patent numbered .414.

3. An objection is also taken that the defendants' machines do not infringe the improvement of the feed motion of Wilson.

The leading original idea of Wilson, and which he has embodied into his improvement, is the substitution of the two surfaces between which the cloth is clasped or held, for the baster plate of previous machines, and so arranging these two surfaces that one of them, by an automatic intermittent motion of one or both, would advance the cloth to the needle, and at the same time admit of its being turned by the hand, so as to sew curved seams. Now, it is quite clear, that this conception, which has remedied a great defect in previous machines by getting rid of the frame upon which the cloth is fastened, and which could move only with the frame or baster plate, and hence, practically, could sew straight seams and fixed curves only, was capable of being embodied into a working machine in various modes and forms. A skillful mechanic, by mere skill, and without the use of the inventive faculties, could embody it, and adapt it to practical use by different mechanical devices. This requires ingenuity, simply, not invention. But so long as Wilson's ideas are found in the construction and arrangement, no matter what way may be its form or shape, or appearance, the party using it is appropriating his invention, and must be held to be an infringer; and within this view we are satisfied the machines of the several defendants must be regarded as violations of the patents in question.

Upon the whole, after the best consideration we have been able to give to these cases, we are satisfied the complainants are entitled to a decree for the infringements and for injunctions, and a reference to master to take an account.

Decree for perpetual injunction and account.

[For other cases involving this patent, see note to Potter v. Whitney, Case No. 11,341.]